# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0350, <u>Thomas Newman v. New Hampshire State Police Permits and Licensing Unit</u>, the court on March 31, 2016, issued the following order:**

Having considered the petitioner's brief, the respondent's memorandum of law, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The petitioner, Thomas Newman, appeals an order of the Circuit Court (<u>Boyle</u>, J.) upholding a decision of the respondent, the New Hampshire State Police Permits and Licensing Unit, to deny his application for a nonresident license to carry a loaded pistol or revolver. <u>See</u> RSA 159:6 (2014) (amended 2015). He argues that: (1) certain administrative rules deeming him not suitable to be licensed are invalid; (2) the evidence was insufficient to support the trial court's decision; and (3) the trial court failed to recognize that his right to carry a firearm was restored by a jurisdiction in which he was convicted of a misdemeanor drug offense in 1997.

RSA 159:6 obligates the director of state police or the director's designee to grant a license to carry a loaded pistol or revolver to a nonresident applicant if the following conditions are met: (1) the applicant "has good reason to fear injury to the applicant's person or property or has any proper purpose"; and (2) the applicant "is a suitable person to be licensed." RSA 159:6, I(a); <u>see</u> <u>also</u> RSA 159:4 (2014); <u>Garand v. Town of Exeter</u>, 159 N.H. 136, 141 (2009) (stating that under RSA 159:6, the licensing authority is required to determine only whether the applicant has good reason to fear injury or any proper purpose and whether the applicant is suitable). An applicant whose application has been denied may appeal the denial by filing a petition in the circuit court. RSA 159:6-c (2014); <u>see</u> <u>also</u> RSA 490-F:3 (Supp. 2015) (granting circuit court jurisdiction conferred upon former district courts).

In an appeal under RSA 159:6-c, the licensing authority bears the burden of demonstrating by clear and convincing proof why the denial was justified. RSA 159:6-c. "[T]he statute contemplates that the trial court will hear evidence and make its own determination whether the petitioner is entitled to a license." <u>DuPont v. Nashua Police Dep't</u>, 167 N.H. 429, 433 (2015) (quotation and brackets omitted). We defer to the trial court's factual findings if they are supported by evidence in the record, and review its application of the law to the facts <u>de</u> <u>novo</u>. <u>Id</u>. at 434.

The New Hampshire Department of Safety has adopted certain administrative rules governing the application process for nonresident licenses to carry. See N.H. Admin. Rules, Safe-C chapter 2100; see also RSA 21-P:14, II(f) (Supp. 2015). Among other requirements, a nonresident applicant must disclose on the application whether he or she has ever been "[c]onvicted of a misdemeanor crime which has not been annulled involving drugs or violence" and, if so, to provide clarifying information on the reverse side of the application. N.H. Admin. Rules, Safe-C 2102.02(e)(3) & (f). By signing the application, the applicant "[c]ertifies that all the statements provided on the application are true, correct and complete." Id., Safe-C 2102.02(j)(3). The rules provide that a license "shall be denied" if the applicant "was convicted of a misdemeanor involving drugs or violence and the conviction date is less than 20 years from the date of application." Id., Safe-C 2103.01(b)(3) & (b)(6). The rules further provide that "[t]he application shall be denied . . . if it is determined that the applicant intentionally made a false statement in response to any question" on the application. Id., Safe-C 2103.02.

In this case, the record establishes that the petitioner, a New York resident, was convicted by a New York court on April 22, 1997, of possession of a controlled substance. The record further establishes that on May 16, 2005, he was convicted by a New York court of conspiracies to engage in: (1) "criminal sale of a controlled substance . . . in that . . . [the petitioner] obtained from another Defendant a quantity of anabolic steroids"; and (2) "criminal sale of a controlled substance . . . in that . . . [the petitioner] obtained a quantity of cocaine from another defendant." The petitioner concedes that the 2005 convictions were for misdemeanor crimes involving drugs. On his application, the petitioner answered "yes" to whether he had "ever been convicted of a misdemeanor involving drugs or violence," and on the reverse side of the application, where he was required to provide "complete details" of his affirmative answer, he disclosed details of the 1997 conviction. He did not, however, disclose the 2005 convictions. He signed the application, certifying that all statements on it were "true, correct, complete and made in good faith."

The respondent denied the application, finding that the 1997 conviction rendered the petitioner not suitable to be licensed under Safe-C 2103.01. After the petitioner filed his appeal pursuant to RSA 159:6-c, the respondent discovered the 2005 convictions and supplemented its denial to include those convictions, and the petitioner's failure to disclose them, as additional grounds to deny the application. With respect to the failure to disclose, the respondent cited Safe-C 2103.02, the provision requiring that it deny an application if it determines that the applicant made an intentional false statement on it.

In the circuit court, the petitioner argued that he was "suitable" because he had received concealed firearms licenses from several jurisdictions, including New York, because he is a federal firearms licensee, because he is a

2

licensed private investigator and security guard and a certified firearms instructor, and because he owns a security guard training school. He further argued that, with respect to the 1997 conviction, his right to carry a gun had been "restored" by New York. Although he acknowledged that he had not disclosed the 2005 convictions, and that they were misdemeanor convictions involving drugs for which the application required "complete details," he claimed in an unsworn memorandum that "he did not equate the inchoate charge of conspiracy as something the State expected to be provided." Finally, he argued that the rules requiring him to disclose the misdemeanor drug convictions, and deeming him unsuitable merely because of the convictions, were invalid because "[i]t is unreasonable and absurd to make such misdemeanor convictions a sole, per se basis for a denial of a license."

In response, the respondent argued that the denial of the petitioner's application was plainly justified under Safe-C 2103.01(b)(6) because he had been convicted of three separate misdemeanor drug crimes within less than a twenty-year span, thereby rendering him not suitable to be licensed. The respondent additionally argued that the denial was justified because the petitioner's failure to disclose the 2005 convictions "despite certifying that all of the statements on the application were true, correct and complete" amounted to an intentional false statement on the application under Safe-C 2103.02. Finally, the respondent argued that the circuit court lacked jurisdiction to determine the validity of the administrative rules.

The trial court upheld the denial of the application, ruling that, "[a]lthough the petitioner's rights have been restored in New York, the State did not abuse its discretion by denying the [application] based upon 3 drug convictions within the past 20 years and the petitioner's failure to disclose two of them." We note that the petitioner does not argue on appeal that this ruling is inconsistent with the standard of review under RSA 159:6-c. Within the context of the relevant administrative rules and the parties' arguments, we construe this order as relying upon both the existence of the drug convictions, and the petitioner's failure to disclose the 2005 convictions, as independent grounds to justify the denial of the application. See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (stating that the interpretation of a trial court order is a question of law, which we review de novo). This appeal followed.

We first address the petitioner's argument concerning the validity of the relevant administrative rules. The petitioner argues on appeal, as he did in the trial court, that rules requiring him to disclose misdemeanor drug convictions, and deeming him unsuitable if he has been "convicted of a misdemeanor involving drugs" within twenty years, are invalid because those rules apply only to nonresidents, and because "[i]t is unreasonable and absurd to make such misdemeanor convictions a sole, per se basis" to deny a license. However, the trial court relied upon both the misdemeanor convictions and the petitioner's

3

failure to disclose two of them as justifying the denial of his application. The petitioner does not challenge the rules requiring that he "certif[y] that all the statements provided on the application are true, correct and complete," and that his application be denied "if it is determined that [he] intentionally made a false statement in response to any question." N.H. Admin. Rules, Safe-C 2102.02(j)(3), 2103.02.

In this case, the respondent determined that the petitioner's failure to disclose the 2005 convictions, despite certifying that his answers were true, correct and complete, amounted to an intentional false statement for purposes of Safe-C 2103.02. In the trial court, the petitioner acknowledged that he failed to disclose the convictions, and that they were misdemeanor drug convictions for which the application required "complete details." Although he claimed, in an unsworn pleading, that "he did not equate the inchoate charge of conspiracy as something the State expected to be provided under the application question," the trial court was not required to credit this assertion. Cf. In the Matter of Aube & Aube, 158 N.H. 459, 465-66 (2009) (stating that we defer to the trial court as to witness credibility, and that it is not required to believe even uncontested evidence). Accordingly, the trial court's order upholding the denial of the application because the petitioner failed to disclose the 2005 convictions was both supported by the evidence and consistent with Safe-C 2103.02. See DuPont, 167 N.H. at 434. Under these circumstances, we need not address whether the regulations requiring the petitioner to disclose the convictions and deeming him unsuitable because of them are valid.

In light of the petitioner's concession that he failed to disclose convictions that were responsive to the application form, his argument that the evidence was insufficient based upon his firearms-related background and licenses misses the mark. Regardless of his background, the determination that the petitioner intentionally failed to disclose the 2005 convictions entitled the respondent to deny the application. N.H. Admin. Rules, Safe-C 2102.02(j)(3), 2103.02; cf. Silverstein v. Town of Alexandria, 150 N.H. 679, 682-83 (2004) (finding applicant's failure to provide relevant criminal background information requested by licensing authority supported denial of application). As noted above, the evidence supports the trial court's decision to uphold the denial on that basis.

For the same reason, the petitioner's argument that the trial court failed to recognize that his right to carry a firearm was restored by New York with respect to the 1997 conviction also misses the mark. In DuPont, the trial court relied solely upon the applicant's disqualification to possess a gun under federal law due to a state law conviction to find that he was unsuitable under RSA 159:6 to be licensed. See DuPont, 167 N.H. at 434. However, we determined that the applicant's civil right to possess a firearm had been fully restored by the jurisdiction that had convicted him so as to remove the federal

4

disqualification, thereby rendering the trial court's reliance upon that disqualification erroneous.  See id. at 434-43.  In this case, the trial court did not rely upon a federal disqualification to uphold the decision to deny the petitioner's application, and any federal disqualification that might have arisen from the 1997 conviction has nothing to do with whether the petitioner provided an intentional false statement on his application.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**